# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIE PAUL VIGIL, JR.,<br><br>   Plaintiff,<br><br>   v.<br><br>JAMES YATES, et al.,<br><br>   Defendants. | Case No.  1:10-cv-01977-LJO-GSA-PC<br><br>FINDINGS AND RECOMMENDATIONS THAT THIS ACTION PROCEED ON THE THIRD AMENDED COMPLAINT AS TO PLAINTIFF'S CLAIMS OF EXCESSIVE FORCE  AGAINST DEFENDANT VALENCIA  AND THAT THE REMAINING CLAIMS  AND DEFENDANTS BE DISMISSED<br><br>OBJECTIONS DUE IN THIRTY DAYS |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis pursuant to 42 U.S.C. § 1983.  This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.  Pending before the Court is the October 1, 2014, third amended complaint.

**I.**

**PROCEDURAL HISTORY**

Plaintiff filed the original complaint in this action on October 21, 2010 (ECF No. 1) and a first amended complaint pursuant to Federal Rule of Civil Procedure 15(a) on November 15, 2010 (ECF No. 9.)  On May 25, 2011, the Court granted Plaintiff leave to file a second amended complaint, which was filed on June 17, 2011.  (ECF No. 18.)  On May 14, 2014, a screening order was issued, directing Plaintiff to either file a third amended complaint or notify the Court of his willingness to proceed on the claims found to be cognizable in the second amended complaint. Plaintiff stated a claim for relief against Defendants Valencia and Diez for excessive

1

force and against Defendant Valencia for retaliation. Plaintiff failed to state a claim for deliberate indifference to his medical needs, false allegations, and failure to supervise. (ECF No. 19.) On October 1, 2014, Plaintiff filed the third amended complaint that is now before the Court. (ECF No. 27.)

Plaintiff, an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) at Kern Valley State Prison, brings this action against correctional officials employed by the CDCR concerning events that occurred while Plaintiff was housed at Pleasant Valley State Prison. Plaintiff names as defendants the following individuals at Pleasant Valley: Warden James Yates; Correctional Officer (C/O) R. Valencia; C/O L. Diez; Sergeant S. Espino; Fire Captain C. King; Medical Technical Assistant (MTA) C. O'Brien; MTA J. Howard; Registered Nurse K. Solo; Dr. R Das, M.D; Dr. E. Brown, M.D. Plaintiff sets forth claims of excessive force and deliberate indifference to serious medical needs in violation of the Eighth Amendment, and failure to supervise.

## II.

## ALLEGATIONS

### A. Excessive Force

#### 1. Defendant Valencia

Plaintiff alleges that on March 11, 2010, C/O Diez and C/O Valencia to were ordered to escort Plaintiff from his cell to Lieutenant Brown's office. C/O Diez and C/O Valencia approached Plaintiff's cell and looked at Plaintiff "with a mad face." (Am Compl. p. 6.) C/O Valencia opened the tray slot and applied handcuffs to Plaintiff, "purposely tightening both handcuffs all the way press down into plaintiff's wrists deeply into his skin cutting off plaintiff's circulation in both of his hands [and] pulled on the chain of the handcuffs as hard as she could through the cell door tray slot repelling plaintiff backwards causing him to hit his lower back against his cell door." (Id. p. 7.) C/O Valencia pulled Plaintiff out of the cell and then both officers "raised up plaintiff's cuff hands behind his back with extreme force as high as both women officers could dipping plaintiff forward while [C/O] Valencia had a hold of plaintiff's left five fingers while purposely squeezing and twisting plaintiff's fingers and left wrist with

2

1  extreme force." (Id.)  Plaintiff asked C/O Valencia, "are you trying to break my wrist?"  C/O
2  Valencia responded that she was only escorting Plaintiff.  Plaintiff tried to avoid water on the
3  floor, but C/O Valencia pushed Plaintiff's head forcefully forward.  Plaintiff slipped and grunted
4  in pain but somehow caught himself from falling.  Plaintiff was escorted to Lt. Brown's office
5  and sat down in a chair.  Sgt. Reeves was present.  Plaintiff alleges that C/O Ramirez then placed
6  Plaintiff in a holding cage for 40 minutes, denying Plaintiff's request to loosen the handcuffs.

7  After the shift change at 1:45, C/O Massetti removed Plaintiff from the cage and, along
8  with C/O Valencia, escorted Plaintiff back to his cell.  Plaintiff alleges that after he entered his
9  cell and backed up to the tray slot to allow C/O Valencia to remove his handcuffs, Valencia
10 "purposely twisted plaintiff's handcuffs on his wrists by pulling hard on the chain and twisting it
11 then defendant ASU officer R. Valencia had unlocked plaintiff's right handcuff then had started
12 once again purposely twisting plaintiff's left handcuff forcefully on plaintiff's wrist causing him
13 to yell in pain." (Id. p. 8.)  Plaintiff told C/O Valencia that he would file a staff complaint if she
14 broke his wrist.  Valencia then "twisted the handcuff on plaintiff on his left wrist one last time
15 with force." (Id.)

16 On March 25, 2010, Valencia and another officer approached Plaintiff's cell door.  The
17 other officer handcuffed Plaintiff and pulled him out of the cell.  Valencia grabbed Plaintiff's
18 arm "very hard" and pulled him about ten steps, then stopped and grabbed the top of Plaintiff's
19 jump suit, pulling him forward, forcing him to walk faster and causing him pain.  Valencia put
20 Plaintiff in a holding cell and purposely kept the handcuffs on for about 30 minutes, intensifying
21 the pain in Plaintiff's hands.

22 On the same day, Plaintiff was interviewed by Defendant Nurse Solo who asked Plaintiff,
23 "What's wrong with you?"  Plaintiff explained that his injuries were caused by the excessive
24 force incident on March 11, 2010.  Plaintiff was escorted back to his cell, where C/O Valencia
25 unlocked one handcuff, then twisted the other handcuff as hard as she could before unlocking it.

26 On March 30, 2010, while escorting Plaintiff, Valencia pulled Plaintiff towards herself
27 forcefully and forced Plaintiff to walk faster, causing him pain.  Valencia also pulled Plaintiff
28 backwards, knocking him off balance and causing him pain, then placed Plaintiff on a scale to be

3

weighed. Later, Defendant MTA O'Brien told Plaintiff to come to his cell door to have his blood pressure taken, but Plaintiff refused because his back was hurt. Specifically, Plaintiff alleges that he could not bend down to have his blood pressure taken through the food port. O'Brien left, and C/O Valencia came and escorted Plaintiff to the doctor's office, insisting that Plaintiff lift his handcuffs higher, causing him pain.

That same day, Dr. Das interviewed and examined Plaintiff. Plaintiff explained all of his pains and injuries and described how Officers Valencia and Diez injured him. Plaintiff alleges that he had extreme pain in both hands and "throbbing pain running up my arms to my shoulders and up to my neck and down my back." (Id. p. 10.)  Plaintiff also complained about limited range of mobility in his hands and arms and that he could not write without extreme pain. Dr. Das ordered an X-ray of Plaintiff's shoulder and told him he would be seen again in two weeks.

On June 7, 2010, C/O Valencia escorted Plaintiff to the medical clinic. Plaintiff alleges that Valencia "had purposely put plaintiff's right handcuff on him twisted with one part of the cuff on Plaintiff's wrist and the other part of the same right cuff was put on Plaintiff's right forearm while in the stand-up cage then defendant ASU Officer R. Valencia, had pulled plaintiff out of the stand-up cage and proceeded to escort plaintiff down B section tier and put plaintiff back in his cell then defendant Officer R. Valencia, had pulled and twisted plaintiff's right handcuff with force through the tray slot door which plaintiff had yelled out in pain then had unhandcuff him." (Id, p. 11.)

**2. Defendants King and Espino**

On April 2, 2010, C/O Rios handcuffed Plaintiff and took him to the shower. When they returned to Plaintiff's cell, one of the handcuffs would not open. Officer Rios took Plaintiff to another hallway and tried again to unlock Plaintiff's left handcuff, but it would not unlock. Other officers tried to unlock it but could not. Rios told Plaintiff to have a seat while Sergeant Espino called the fire department to remove the cuff. Defendant Fire Captain C. King appeared with oversize bolt cutters approximately four feet long weighing 30 pounds. Sergeant Espino instructed Plaintiff to lay his left handcuff and fingers were sticking out on the other side of the cell door. King used the bolt cutters while Espino pulled down on the loose handcuff chain.

Captain King bent Plaintiff's left hand and wrist downward, tilting the bolt cutters toward his chest, and Plaintiff cried out in pain. They stopped the process for about five minutes, and then tried again. Sergeant Espino pulled down on the chain of the loose handcuff extremely hard while Captain King tilted the end of bolt cutters, cutting in a different area of the handcuff while purposely not cutting all the way through. Plaintiff yelled louder again in great pain, and they stopped the process again for about fifteen minutes. Captain King asked Plaintiff, "Why are you yelling?" and Plaintiff explained that he was in pain from his injuries. (Id. ¶ 45.)

On the third attempt, Sergeant Espino purposely pulled down on the chain of the loose handcuff extremely hard with force, with both hands, while Captain King cut the cuffs in a different area, bending Plaintiff's left hand and wrist downward. Plaintiff yelled out louder once again in extreme pain, and they stopped the process again for about twenty minutes.

On the fourth attempt, the same thing happened and Plaintiff yelled even louder in extreme pain. Sergeant Espino asked Plaintiff, "Are you all right?" Plaintiff said, "No, I'm not all right because I have extreme pain in my left hand, fingers, wrist, arms and shoulders." (Id. ¶ 47.)  Espino told Plaintiff that they would have the nurse check him out.

MTA O'Brien carefully picked up Plaintiff's wounded left hand, and Plaintiff showed him the bump and redness on his left wrist. MTA O'Brien slowly turned Plaintiff's hand over while examining it, and Plaintiff yelled in pain and was breathing hard. MTA O'Brien put Plaintiff's hand down and left. Plaintiff sat in the holding cell in the hallway, breathing hard and in extreme pain, for about twenty minutes. Office Rios escorted Plaintiff to his cell.

**B. Medical Care**

**1. March 11, 2010**

Plaintiff submitted a Health Care Services Request to MTA Howard, requesting to be examined by a physician for his injuries incurred during the use of force. Howard told Plaintiff that he would turn in the request to the Registered Nurse. Howard then left. Plaintiff alleges that at some point, he submitted a request for his medical records, and could not find a copy of the Health Care Services Request in his file.

### 2. March 17, 2010

Plaintiff submitted a Health Care Services Request to MTA O'Brien. As with MTA Howard, Plaintiff explained his condition and submitted a request to be seen by a physician. MTA O'Brien told Plaintiff he would turn in the request. Plaintiff later learned that the request was not in his medical file. Plaintiff re-submitted his request on March 21, 2010.

On five occasions from March 24, 2010, to April 23, 2010, Plaintiff submitted Health Care Services Requests, seeking to be seen by a physician for his injuries.

### 3. May 4, 2010

Plaintiff was seen by Defendant Dr. Brown. Plaintiff explained to Dr. Brown that he had "new current" injuries sustained as a result of excessive force on April 2, 2010. Plaintiff explained that he was seen by Dr. Das for treatment of the injuries as a result of the use of force incident on March 11, 2010. Plaintiff told Dr. Brown that Dr. Das "failed to give his physician's orders to order M.R.I. x-rays to be done on me although Dr. R. Das has said to me that he was going to x-ray my right shoulder and both my hands first and then would call me back in two weeks to order x-rays on my left shoulder and lower back but Dr. R. Das had failed to call me back in two weeks from March, 20, 2010." (Id. p. 20.)   Dr. Brown told Plaintiff that "your x-rays on your right shoulder looks like its degenerating." (Id.)  Plaintiff explained to Dr. Brown that the x-rays indicated that he needed surgery. Dr. Brown told Plaintiff that he would order x-rays of his left shoulder, and would increase his prescription for Tramadol. Plaintiff told Dr. Brown that the Tramadol was not working, and requested Morphine. Dr. Brown declined to prescribe Morphine. He increased the Tramadol and prescribed wrist braces.

On eleven occasions between May 11, 2010, and July 11, 2010, Plaintiff submitted Health Care Services Requests, seeking requesting different pain medication, referral to an outside doctor and an MRI. Plaintiff also requested a referral for shoulder surgery.

///

///

///

6

# III.

# ANALYSIS

## A. Excessive Force

The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 5 (1992)(citations omitted). For claims arising out of the use of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010)(per curiam)(citing Hudson, 503 U.S. at 7)(internal quotation marks omitted); Furnace v. Sullivan, 705 F.3d 1021, 1028 (9th Cir. 2013). The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of decency, Hudson, 503 U.S. at 8 (quotation and citation marks omitted), and although de minimis uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident, Wilkins, 559 U.S. at 37-8 (citing Hudson, 503 U.S. at 9-10)(quotation marks omitted); Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002).

### 1. Defendants Diez and Valencia

The Court finds that, liberally, construed, the third amended complaint states a claim for relief against Defendant Correctional Officer Valencia for use of excessive force on March 11, 2010, and June 7, 2010. Plaintiff alleges facts indicating that, on March 11, 2010, C/O Valencia purposely placed handcuffs on Plaintiff so tightly that it caused injury, and that C/O Valencia pulled and twisted Plaintiff's arm while he was in handcuffs. On June 7, 2010, C/O Valencia pulled and twisted Plaintiff's handcuffed wrist through the tray slot in his cell. Liberally construed, Plaintiff has stated a colorable claim for relief. Wall v. County of Orange, 364 F.3d 1107, 1112 (9th Cir. 2004)("[O]verly tight handcuffing can constitute excessive force."); Lalonde v. County of Riverside, 204 F.3d 947, 960 (9th Cir. 2000)('[T]ight handcuffing can constitute excessive force.").

As to the incident on March 25, 2010, Plaintiff alleges that C/O Valencia pulled Plaintiff

1  hard, causing him to walk faster.  Valencia also put Plaintiff in a holding cell while in
2  handcuffs for 30 minutes.   As to the March 30, 2010, incident, Plaintiff alleges that C/O
3  Valencia pulled Plaintiff towards herself forcefully, and forced Plaintiff to walk faster, causing
4  him pain.  C/O Valencia also pulled Plaintiff backwards, causing him pain.   Neither of these
5  actions constitutes excessive force within the meaning of the Eighth Amendment.  Plaintiff has
6  alleged, at most, a shove by C/O Valencia, and that he remained in a holding cage while
7  handcuffed for half an hour.  Not "every malevolent touch by a prison guard gives rise to a
8  federal cause of action," and '[t]he Eighth Amendment's prohibition of cruel and unusual
9  punishment necessarily excludes from constitutional recognition de minimis uses of physical
10 force, provided that the use of force is not of a sort repugnant to the conscience of mankind."
11 Hudson, 503 U.S. at 8-10 (citations and quotations omitted).  It is only the malicious and
12 sadistic use of force to cause harm that violates the Eighth Amendment. Id. at 7.   That Plaintiff
13 was in pain does not subject Defendant Valencia to liability.  Plaintiff must allege facts
14 indicating that Valencia's conduct was malicious, sadistic and purposely caused harm.  That
15 Plaintiff was shoved and forced to walk fast, or that Plaintiff was made to stand in a holding
16 cage for half an hour while handcuffed, does not state a claim for relief.

17  As to Defendant C/O Diez, Plaintiff has made no allegations of conduct in the third
18 amended complaint that constitutes excessive force.  The only conduct charged to Defendant
19 Diez is that she looked at Plaintiff with a "mad face."  In order to hold Defendant Diez liable,
20 Plaintiff must alleged facts indicating that she engaged in conduct that constitutes excessive
21 force as that term is defined above. Plaintiff has failed to do so.  This claim should therefore be
22 dismissed.  Although Plaintiff alleged facts in the second amended complaint that stated a
23 colorable claim for relief on his claim of excessive force against C/O Diez, Plaintiff does not
24 allege those facts in the third amended complaint.  In the order granting Plaintiff leave to file a
25 third amended complaint, Plaintiff was specifically advised that if he filed a third amended
26 complaint, it would supercede the second amended complaint, Lacey v. Maricopa County, 693
27 F.3d 896, 907 n. 1 (9th Cir. 2012)(en banc), and that the third amended complaint must be
28 complete in itself without reference to a prior pleading.  Local Rule 220.  Defendant Diez must

therefore be dismissed.

**2. Defendants King and Espino**

Plaintiff was previously notified of the applicable legal standard and the deficiencies in his pleading, and despite guidance from the Court, Plaintiff's allegations regarding Defendants King and Espino are largely identical to the allegations set forth in the second amended complaint. As in the second amended complaint, the allegations of the third amended complaint do not show that Defendants Espino or King used force against Plaintiff sadistically or maliciously for the purpose of causing harm. Rather, Plaintiff alleges that whenever Plaintiff stated that he was in pain, Defendants Espino and King made efforts to temper the severity of the force by stopping the process and talking to Plaintiff to determine what was happening. The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of decency, Hudson, 503 U.S. at 8 (quotation marks and citation omitted). There are no facts alleged indicating that any Defendant intentionally locked Plaintiff's handcuffs in such a way as to impair the ability to remove them. The allegations indicate that correctional officers attempted to use other keys before resorting to the use of the bolt cutters. Further, the facts alleged indicate that correctional officers called a fire professional, Defendant King, to remove the handcuffs. Plaintiff's excessive force claim against Defendants King and Espino should therefore be dismissed.

**B. Medical Care**

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately

1  indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096).  Deliberate indifference is
2  shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical
3  need, and (b) harm caused by the indifference." (Id.)  The requisite state of mind is one of
4  subjective recklessness, which entails more than ordinary lack of due care.  Snow, 681 F.3d at
5  985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

6  "A difference of opinion between a physician and the prisoner – or between medical
7  professionals – concerning what medical care is appropriate does not amount to deliberate
8  indifference." Snow, 681 F.3d at 987 (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)),
9  overruled in part on other grounds, Peralta, 744 F.3d at 1082-83 (9th Cir. 2014); Wilhelm, 680
10 F.3d at 1122 (9th Cir. 2012).

11 Although Plaintiff alleges that he suffered from an objectively serious medical condition,
12 he has not alleged facts indicating that Defendants were deliberately indifferent to that condition.

13 Regarding Plaintiff's allegation that he turned in a Health Care Services Request to
14 Defendant MTA Howard on March 11, 2010, such an allegation, with nothing more, fails to
15 state a claim against MTA Howard.  Assuming MTA Howard did not turn in the form, Plaintiff
16 has not alleged facts indicating that MTA Howard was aware of an objectively serious medical
17 condition and disregarded that condition, causing Plaintiff injury.  The only conduct charged to
18 MTA Howard is that he did not turn in Plaintiff's request.

19 Regarding Plaintiff's allegations against Dr. Brown, Plaintiff has not alleged facts
20 sufficient to state a claim for relief.  Plaintiff was seen by Dr. Brown, who ordered an x-ray,
21 prescribed wrist braces, and increased Plaintiff's Tramadol prescription.  As noted, a
22 disagreement with the course of treatment fails to state a claim for relief. That Dr. Brown refused
23 Plaintiff's request for morphine does not subject him to liability under the Eight Amendment.
24 Plaintiff alleges that he told Dr. Brown that Dr. Das failed to order an MRI and failed to follow
25 up with an x-ray.  Plaintiff does not, however, allege facts indicating that Dr. Brown was aware
26 of an objectively serious medical condition of Plaintiff's, and was deliberately indifferent to it.
27 That Dr. Das, in Plaintiff's view, failed to adequately treat him does not subject Dr. Brown to
28 liability.

**C. Failure to Supervise**

Plaintiff claims that Defendants Pleasant Valley State Prison and Warden James Yates are liable for "their staff employee's excessive force on plaintiff and for their medical staff employee's deliberate indifference to plaintiff's serious medical needs." (Am. Compl. p. 24.) Supervisory personnel may not be held liable under section 1983 for the actions of subordinate employees based on respondeat superior, or vicarious liability. Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013.); accord Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Lacey v. Maricopa County, 693 F.3d 896, 915-16 (9th Cir. 2012)(en banc). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Crowley, 734 F.3d at 977 (citing Snow, 681 F.3d at 989)(internal quotation marks omitted); accord Lemire, 726 F.3d at 1074-75; Lacey, 693 F.3d at 915-16.

Here, Plaintiff seeks to impose liability on Defendant Yates for failing to supervise his subordinates and to prevent the incident that resulted in his injury. However, Plaintiff fails to allege any facts indicating that Yates had knowledge of the alleged violations of his subordinate or that he participated in or directed the violation. Plaintiff therefore fails to state a claim against Defendant Yates.

As to Defendant Pleasant Valley State Prison, Plaintiff may not sustain an action against a state prison. The Eleventh Amendment prohibits federal courts from hearing suits brought against an un-consenting state. Brooks v. Sulphur Springs Valley Elec. Co., 951 F.2d 1050, 1053 (9th Cir. 1991); see also Seminole Tribe of Fla. V. Florida, 517 U.S. 44, 52 (1996); Puerto Rico Aqueduct Sewer Auth. v. Metcalf Eddy, Inc., 506 U.S. 139, 144 (1993); Austin v. State Indus. Ins. Sys., 939 F.2d 676, 677 (9th Cir. 1991). The Eleventh Amendment bars suits against state agencies as well as those where the state itself if named as a defendant. See Natural Resources Defense Council v. California Dep't of Transp., 96 F.3d 420, 421 (9th Cir. 1996); Brooks, 951 F.2d at 1053; Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)(concluding that Nevada Department of Prisons was a state agency entitled to Eleventh Amendment immunity).

11

1 "The Eleventh Amendment's jurisdictional bar covers suits naming state agencies and
2 departments as defendants, and applies whether the relief is legal or equitable in nature."
3 Brooks, 951 F.2d at 1053. Pleasant Valley State Prison, an agency of the state of California, is
4 therefore immune from suit.

## IV.

## CONCLUSION AND RECOMMENDATION

Plaintiff states a cognizable claim against Defendant C/O Valencia for excessive force in violation of the Eighth Amendment on March 11, 2010 and June 7, 2010. Regarding the remaining claims and Defendants, Plaintiff was previously notified of the applicable legal standard and the deficiencies in his pleading, and despite guidance from the Court, Plaintiff's third amended complaint is largely identical to the second amended complaint. Based upon the allegations in Plaintiff's original complaint, first amended complaint, second amended complaint, and third amended complaint, the Court is persuaded that Plaintiff is unable to allege any additional facts that would support a claim for Excessive force, deliberate indifference to medical needs or failure to supervise against any of the remaining Defendants, and further amendment would be futile. See Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile.") Based on the nature of the deficiencies at issue, the Court finds that further leave to amend is not warranted. Lopez v. Smith, 203 F.3d 1122, 1130 (9th. Cir. 2000); Noll v. Carlson, 809 F.2d 1446-1449 (9th Cir. 1987).

Accordingly, IT IS HEREBY RECOMMENDED that this action proceed on the October 1, 2014, third amended complaint against Defendant C/O Valencia for excessive force in violation of the Eighth Amendment on March 11, 2010 and June 7, 2010, and the remaining claims and Defendants be dismissed.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provision of Title 28 U.S.C. §636 (b)(1)(B). Within **thirty (30)** days after being served with these Finding and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to

Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v.</u> Wheeler, 772 F.2d F.3d 834, 838-39 (9th Cir. 2014)(citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 18, 2016**

UNITED STATES MAGISTRATE JUDGE